**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2907-24

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JOSEPH C. GRIECO, a/k/a
JOE C. GRIECO,

      Defendant-Appellant.

_____

      Argued March 24, 2026 – Decided August 3, 2026

      Before Judges Rose, DeAlmeida and Torregrossa-O'Connor.

      On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 23-12-0301.

      Alan Silber argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; Alan Silber and Remi L. Spencer, of counsel and on the briefs).

      Shaina Brenner, Assistant Prosecutor, argued the cause for respondent (Daniel M. Perez, Sussex County Prosecutor, attorney; Shaina Brenner, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Joseph C. Grieco, a retired police officer, of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), the sole count charged in a Sussex County indictment, for the shooting death of his husband, John Kelly, in the kitchen of their Vernon apartment. Defendant did not deny he shot Kelly. He claimed the shooting was a tragic accident.

During the multi-day trial, the State presented evidence demonstrating in the hours leading to the early morning shooting on July 26, 2023, defendant had been drinking alcoholic beverages with Kelly, their friend, Brian Taylor, and his friend, Jennifer Monteleone, at the local VFW post until it closed, then continued drinking at the Grieco-Kelly home. Taylor testified defendant drank two vodka beverages and one beer at the VFW post; Monteleone testified defendant then consumed at least one vodka with muddled strawberries drink at home.

The State's proofs also revealed defendant and Kelly were celebrating defendant's receipt of disability benefits. The conversation among the four was friendly and the topics were varied. At some point after they arrived at the Greico-Kelly home, defendant left the kitchen area, entered his bedroom, and returned with his Glock service weapon. Taylor testified he and Kelly told

2

defendant a gun was not necessary, defendant placed the gun on the counter, and the conversation continued. Taylor further testified, shortly thereafter, defendant picked up the gun, Taylor and Kelly both told him the firearm was loaded—but defendant countered it was not loaded and fired it once at Kelly. Within minutes, Kelly succumbed to a single gunshot wound to the lower abdomen.

The State also presented the testimony of Officer Joseph White of the Vernon Township Police Department, who responded to the scene; firearm forensic examination expert, Investigator Earl Williams of the New Jersey State Police, who testified defendant's service weapon was operable and noted no malfunctions; and firearms expert, Detective Sergeant Jason Garrigan of the Sussex County Prosecutor's Office, who testified about the difference in weight between a loaded and unloaded Glock firearm and opined, based on his testing and experience with Glock firearms, at the time of the shooting "the trigger was pulled and the weapon went off." At the close of the State's evidence, the judge denied defendant's motion for a directed verdict.

Defendant did not testify, but contended he thought the gun was unloaded and accidentally misfired. Defendant did not dispute he consumed alcoholic beverages in the hours leading to the shooting, but claimed he was not

A-2907-24

intoxicated. To further his defenses, defendant presented the testimony of his toxicology and pharmacology expert, Gary L. Lage, Ph.D., and firearms and operability expert, Shaun Jaikissoon. Defendant also called two character witnesses, including Kelly's mother.

Pertinent to this appeal, during redirect examination of White, the prosecutor elicited testimony that no amount of alcohol was permissible while using a firearm. During cross-examination of Dr. Lage, the prosecutor cited N.J.S.A. 2C:58-4.4, which prohibits the holder of a carry permit from consuming or being under the influence of alcohol while carrying a handgun. The trial judge overruled defendant's objections to both lines of inquiry. The judge later denied defendant's motion for a mistrial regarding the prosecutor's cross-examination of Dr. Lage. In the final jury charge, the judge issued a limiting instruction explaining how to consider Dr. Lage's testimony and any testimony about defendant's alcohol consumption.

The parties moved into evidence various exhibits, including a surveillance video from the VFW post capturing the drinks served by the bartender to defendant, Kelly, Taylor, and Monteleone.[1] The parties also stipulated to certain facts, including "defendant was a fourteen-year veteran of the Tenafly Police

_____

[1] The video was not provided on appeal.

4

Department" (TPD) and the Glock firearm at issue was defendant's service weapon he had purchased from the TPD.

Prior to the April 7, 2025 sentencing, the trial judge denied defendant's alternative motions for a judgment of acquittal or a new trial. In his oral decision, the judge thoroughly addressed the governing law for both applications. The judge was not persuaded the verdict was inconsistent with the evidence or the prosecutor's objected-to cross-examination of Dr. Lage was improper.

Immediately thereafter, the judge considered the passionate statements of Kelly's parents and many letters of support in mitigation of defendant's sentence. Persuaded by their pleas, the judge imposed an eleven-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On August 26, 2025, the trial judge denied defendant's newly-retained appellate counsel's motion for bail pending appeal. Following arguments, the judge issued a cogent oral decision rejecting defendant's reprised challenges concerning the prosecutor's redirect examination of White and cross-examination of Dr. Lage. The judge also rejected defendant's newly-raised contention the court erroneously failed, sua sponte, to issue a mistake-of-fact jury instruction in view of defendant's belief the gun was unloaded. We denied

defendant's ensuing motion for bail pursuant to Rule 2:9-4. State v. Grieco, No. A-2907-24 (App. Div. Sept. 25, 2025).

Defendant appeals from the April 22, 2025 judgment of conviction.[2] In his first two points, defendant renews his challenges to the two evidentiary rulings; in his third point, he further argues the omission of a mistake-of-fact jury instruction rises to plain error:

> I. PERMITTING . . . WHITE'S TESTIMONY, OVER DEFENSE OBJECTION, WAS REVERSIBLE ERROR.
>
> II. THE STATE'S SUGGESTION THAT CONSUMING ANY ALCOHOL EQUALS RECKLESSNESS WAS MORE PREJUDICIAL THAN PROBATIVE.
>
> III. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE DEFENSE OF MISTAKE OF FACT DEPRIVED DEFENDANT OF A FAIR TRIAL AND REQUIRES REVERSAL OF HIS CONVICTION.
> (Not raised below)

Having considered defendant's contentions in view of the record, we affirm.

---

[2] On March 16, 2026, while defendant's appeal was pending, the State advised this court that on January 19, 2026, then Governor Philip D. Murphy issued an order commuting defendant's sentence to four years and six days, with a four-year and six-day parole disqualifier, and declaring defendant's sentence will be satisfied on January 19, 2029.

I.

Initially, we consider defendant's overlapping challenges to the trial judge's evidentiary rulings pursuant to our deferential standard of review. See State v. Garcia, 245 N.J. 412, 430 (2021). Absent an abuse of discretion, we defer to the court's evidentiary rulings "because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Williamson, 246 N.J. 185, 198-99 (2021) (quoting State v. Prall, 231 N.J. 567, 580 (2018)). We only reverse those "rulings that undermine confidence in the validity of the conviction or misapply the law." State v. Weaver, 219 N.J. 131, 149 (2014). Because the alleged errors were brought to the judge's attention, we review for harmful error, that is, "whether the error is 'clearly capable of producing an unjust result.'" State v. Mohammed, 226 N.J. 71, 86-87 (2013) (quoting R. 2:10-2).

A. White's Testimony

On direct examination during the State's case-in-chief, White testified about his response to the Greico-Kelly residence following Taylor's 9-1-1 call. On cross-examination, White acknowledged police did not subject defendant to field sobriety tests, an Alcotest, or blood draw. In response, on redirect examination, the prosecutor elicited testimony from White that an Alcotest

generally is performed when an individual is stopped for driving while intoxicated (DWI).

The following exchange ensued:

> [PROSECUTOR]: And there was no motor vehicle stop in this, correct?
>
> [WHITE]: No.
>
> [PROSECUTOR]: And there was no charges [sic] for DWI, correct?
>
> [WHITE]: No.
>
> [PROSECUTOR]: In your opinion, is there any amount of alcohol that can be consumed –

Defense counsel objected on foundation grounds; the trial judge sustained the objection as to form. After White again acknowledged defendant was not charged with DWI, the questioning continued:

> [PROSECUTOR]: Is there a per se amount of alcohol for a DWI charge to be issued?
>
> [WHITE]: .08.
>
> [PROSECUTOR]: Is there any per se alcohol amount charged or is there any per se alcohol amount that could be consumed to make it safe to operate a firearm?

Defense counsel again objected on foundation grounds, contending the answer called for a legal conclusion. In response, the State argued "the defense

8

opened the door in this in regards [sic] to the [blood alcohol content (BAC)]." Overruling the objection, the judge found, "I don't think this is an opinion . . . it's within his training and experience." The prosecutor concluded her redirect examination as follows:

> [PROSECUTOR]: Officer, is there any per se amount of alcohol that would be permitted to allow somebody to use a firearm?
>
> [WHITE]: No.

### B. Dr. Lage's Testimony

On direct examination during defendant's case, Dr. Lage detailed the recognized methods for testing whether an individual is under the influence of alcohol, including police observations, field sobriety tests, and blood alcohol tests. Based on his review of the evidence, Dr. Lage opined defendant's BAC level at the time of the 1:00 a.m. shooting was "in the range of .02 to .03 percent, a fairly low blood alcohol level." Dr. Lage further opined that range was "below any level that would have a significant impact on somebody's cognitive abilities or any other impact in terms of the shooting."

On cross-examination, Dr. Lage acknowledged "a BAC of .01 to .05 impacts the frontal lobe" of the brain, decreasing the individual's inhibitions and judgment. He further agreed "exercising good judgment is an important facet

of handling a handgun" and "consum[ing] alcohol to the point where your judgment is diminished . . . [c]ould impact your ability to handle that firearm." When requested to define "intoxicated," Dr. Lage testified: "Our legislatures have determined that you're intoxicated for operating a motor vehicle when you're at .08."

Against that backdrop, the prosecutor inquired whether Dr. Lage was "aware that the State of New Jersey has certain laws in place regarding the consumption of alcohol and handling of a firearm." Dr. Lage replied he was not. He also stated he could not respond "in the abstract" to the prosecutor's next question, "Would that be relevant to your consideration as to what the appropriate amount of alcohol is when handling a firearm?" The prosecutor then marked for identification a copy of N.J.S.A. 2C:58-4.4.

At sidebar, defense counsel objected to the inquiry on relevancy grounds. The prosecutor countered he sought to question Dr. Lage about the statute "for impeachment purposes." After excusing the jury and the witness, the judge held argument in open court. The prosecutor elaborated:

> [O]n direct, [defense counsel] asked many questions regarding alcohol consumption, impairment, intoxication. The witness continuously referred to the standard for alcohol consumption and impairment as it relates to operating a motor vehicle. I asked him a question further about the charts he has about the

impact of alcohol at .01 through .05. I intend to impeach him to show that the intoxication impairment standards for vehicles clearly don't apply and have not been recognized by our Legislature since he at one point said our Legislature has deemed .08 to be the . . . mark for impairment. . . . I want to impeach him to show that there are laws that say that an individual cannot consume alcohol while carrying a handgun. And [the statute] clearly says no alcohol.

Defense counsel countered the statute "discusses under the influence" but "multiple definitions" in the Code of Criminal Justice "are all the same, which is .08." Acknowledging N.J.S.A. 2C:58-4.4 "doesn't specifically say .08," defense counsel argued "under the influence is very clear in New Jersey." Defense counsel further claimed it was improper to question Dr. Lage about a legal conclusion and the statute only applies to carry permits whereas here defendant possessed the weapon in his home.

Finding "the defense opened the door here by eliciting testimony that equated being under the influence to .08 [BAC] as it relates to operating a motor vehicle," the judge permitted the prosecutor to impeach Dr. Lage's testimony by citing N.J.S.A. 2C:58-4.4, which "reflects that while carrying [a handgun, an individual] is not permitted to use or consume alcohol, nor is one permitted to be under the influence of alcohol." The judge noted the term "under the

influence" in the statute could reflect "a much lower level" when controlling or carrying a handgun.

Referencing N.J.S.A. 2C:58-4.4, the prosecutor continued his cross-examination of Dr. Lage, who acknowledged the statute provides: "The holder of a permit to carry a handgun issued pursuant to N.J.S.A. 2C:58-4 shall not use or consume alcohol, a cannabis item, or a controlled substance while carrying a handgun" and "shall not be under the influence of alcohol, cannabis, or a controlled substance while carrying a handgun." Dr. Lage further agreed the statute "makes no reference to .08," which "is the benchmark or per se for motor vehicles," and "we are not dealing with a motor vehicle in this case."

In his motion for a mistrial the following day, defense counsel renewed his objection, emphasizing defendant was not charged with violating N.J.S.A. 2C:58-4.4, and reference to the statute was improper bad act testimony or propensity evidence. Following extensive argument, the trial judge denied the motion, maintaining "the door was opened" by the defense. The judge elaborated: "[T]he clear implication and import of the testimony was that as far as Dr. Lage was concerned, intoxication would not occur unless somebody was at a level of .08. The State had every right to challenge his testimony and impeach his credibility when it came to that assertion." Citing N.J.R.E. 105 and

12

noting defendant did not request a limiting instruction after his objection was overruled, the judge stated the parties could address a limiting instruction during the ensuing charge conference.

Accordingly, during his final instructions to the jury, with the consent of counsel, the trial judge issued the following instruction:

> There has been testimony during the trial regarding allegations that [defendant] was consuming alcohol during the evening of July 25 and early morning time of July 26, 2023, and what impact, if any, such alcohol consumption may or may not have had on [defendant]'s actions. Whether [defendant] consumed alcohol and, if he did, then how much he consumed and what effect, if any, . . . the alcohol had on him and his actions are all factual questions for you, the jury, to decide.
>
> You may recall hearing testimony about what it mean[s] to be intoxicated for purposes of the drunk driving laws in New Jersey. This case does not involve the New Jersey drunk driving laws. You may also recall hearing testimony during the cross-examination of Dr. Gary Lage about a New Jersey law that limits someone with a firearms carry permit from possessing or being under the influence, or being under the influence [sic] of alcohol while exercising their right to carry.
>
> That testimony was allowed for the limited purpose of challenging Dr. Lage's credibility, often referred to as impeachment evidence, when it came to his opinions on the interaction of New Jersey laws regarding alcohol and firearms use. It was merely offered for the very limited purpose as to whether or not

it affects the credibility of Dr. Lage's testimony. It was not offered a[s] substantive proof that [defendant] had violated that law. In fact, if you find that [defendant] had a firearm in his possession while in his residence on the date in question, the carry permit law would not even apply because one does not need a carry permit when owning or possessing a firearm within their residence.

In fact, New Jersey does not have a law that specifically deals with alcohol limits and firearms in a residence. The issue of whether [defendant] was under the influence of alcohol and, if so, what impact if any that may have had on the events in question is a fact question for the jury to decide under the totality of the circumstances, bearing in mind at all times that it is the burden of the State to prove each and every element of the offense charged beyond a reasonable doubt.

## C. Defendant's Evidentiary Challenges

Defendant argues the State impermissibly elicited testimony from White and Dr. Lage "to insinuate that [defendant]'s consumption of any alcohol on July 26, 2023, was reckless." He maintains both rulings, singly, denied him a fair trial.

### 1. Objections Posed to White's Testimony

Defendant argues the record does not support the trial judge's determination that White's testimony—there is no "per se alcohol amount that could be consumed to make it safe to operate a firearm"—was based on his training and experience. Defendant further asserts, regardless, legal

14

determinations fall within the trial court's exclusive province. The State maintains defendant opened the door to this line of inquiry.

At first blush, White's answer appears to constitute opinion testimony and a legal conclusion. As our Supreme Court has reiterated, "a question that requires a witness to use 'his training and experience' to 'testify about his belief as to what had happened,' strongly suggests that the question calls for an expert opinion, governed by N.J.R.E. 702." State v. Derry, 250 N.J. 611, 632 (2022) (quoting State v. McLean, 205 N.J. 438, 462 (2011)). Further, "[b]ecause expert testimony is based on the need to assist an average juror, it is generally not admissible as to questions of law decided by the court." State v. Young, 474 N.J. Super. 507, 520 (App. Div. 2023); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 2.4.2 on N.J.R.E. 702 (2026-27).

As the trial judge explained in his decision on defendant's bail motion, however, the defense strategy seemingly went

> to great lengths in this case to try to find a way to equate drunk driving legal restrictions with what is reasonable or not reasonable when it comes to using a firearm under the circumstances that were presented here where a jury [wa]s going to be charged on a recklessness or aggravated recklessness basis.

The judge further noted, in his cross-examination of White, who was the State's second witness, defense counsel laid the groundwork that the jury should

15

consider defendant's alcohol consumption when "analyzing whether or not alcohol played a factor here, in a way that is analogous to how a defendant might be looked at in a DWI case." In addition, the judge recognized defense counsel questioned White about his training and qualifications. Our review of the record reveals, on cross-examination, White acknowledged he was "a certified Alcotest operator."

Moreover, in the final jury charge, the trial judge issued clear instructions on how to consider all testimony concerning defendant's alcohol consumption, expressly explaining, "[w]hether [defendant] consumed alcohol and, if he did, then how much he consumed and what effect, if any, . . . the alcohol had on him and his actions [we]re all factual questions" for the jury's consideration. Appellate courts "must assume that the jury followed the instructions delivered by the trial court." State v. Marshall, 173 N.J. 343, 355 (2002); see also State v. Martini, 187 N.J. 469, 477 (2006).

In view of the defense line of inquiry and the trial judge's explicit jury instructions, we cannot conclude the judge abused his discretion by admitting White's testimony. Even if the testimony was erroneously admitted, however, we conclude any error was harmless.

16

## 2. Objections Posed to Dr. Lage's Testimony

Defendant reiterates the trial judge erroneously overruled his objection to the prosecutor's referencing N.J.S.A. 2C:58-4.4 in his cross-examination of Dr. Lage. Quoting the Court's decision in Prall, 231 N.J. at 582-83, defendant argues, in ruling defendant opened the door to the prosecutor's inquiry, the judge failed to balance the probative value of the evidence against the undue prejudice to defendant.

In Prall, 231 N.J. at 582, the Court restated its holding in State v. James, 144 N.J. 538, 554 (1996): "The 'opening the door' doctrine is 'a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection.'" The doctrine allows "a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." Prall, 231 N.J. at 582-83 (quoting James, 144 N.J. at 554). As defendant argues here, "[t]he doctrine is limited, however, by weighing the probative value against the prejudicial nature of the evidence under N.J.R.E. 403." Id. at 583.

A-2907-24

In his decisions overruling defendant's objections and denying his motion for a mistrial and a new trial, the judge did not expressly weigh the probative value of the State's impeachment of Dr. Lage by referencing N.J.S.A. 2C:58-4.4 against the undue prejudice to defendant. In his decision on defendant's bail motion, the judge noted "the probative value was [not] outweighed by the prejudicial nature of the question and answer."

We are satisfied the final instructions delivered in this case sufficiently addressed any prejudice associated with the prosecutor's reference to N.J.S.A. 2C:58-4.4 in his cross-examination of Dr. Lage. The judge expressly stated that law was "merely offered for the very limited purpose as to whether or not it affect[ed] the credibility of Dr. Lage's testimony" and should not be considered "substantive proof that [defendant] had violated that law." The judge further informed the jury, "New Jersey does not have a law that specifically deals with alcohol limits and firearms in a residence."

On this record, we cannot conclude the trial judge abused his discretion by permitting the State's cross-examination or fashioning jury instructions, with the consent of counsel, to address how the jury should consider Dr. Lage's testimony. Even if the testimony was erroneously admitted, however, we conclude any error was harmless.

18

We turn to defendant's final point that the trial judge erroneously failed to charge the jury, sua sponte, on the "defense" of mistake of fact pursuant to our Supreme Court's decision in State v. Sexton, 160 N.J. 93, 102-07 (1999).  See Model Jury Charges (Criminal), "Ignorance or Mistake (N.J.S.A. 2C:2-4)" (approved May 7, 2007).  Defendant argues:  "There was ample trial evidence that defendant believed the firearm was unloaded at the time of the shooting, which, if credited, could negate the mens rea required for the offense of conviction."  To support his argument, defendant cites Taylor's testimony that defendant said the gun was unloaded.[3]  Defendant claims:  "This belief—if credited by the jury—could have negated the aggravated recklessness element required to support the conviction."

Because defendant did not seek an instruction on ignorance or mistake of fact before the trial court, we review his newly-minted challenge through the prism of the plain error standard, reversing the conviction only if the error was

---

[3]  Inexplicably, in his merits and reply briefs, defendant also cites his statement to law enforcement at the scene immediately following the shooting:  "I thought there was nothing in the magazine."  However, defendant's statement was not introduced into evidence at trial.  Instead, following an N.J.R.E. 104(c) hearing, the court granted the State's pretrial application to use defendant's statement as potential impeachment if defendant elected to testify at trial.  As noted, defendant did not testify.

"clearly capable of producing an unjust result."  R. 2:10-2; see also R. 1:7-2; State v. Dunbrack, 245 N.J. 531, 544 (2021) (holding a defendant's failure to request an instruction necessitates review under the plain error standard).

It is beyond cavil that when instructing a jury, "[t]he trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).  "[B]ecause correct jury charges are especially critical in guiding deliberations in criminal matters, improper instructions on material issues are presumed to constitute reversible error."  State v. Jenkins, 178 N.J. 347, 361 (2004).

However, "the test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." Baum, 224 N.J. at 159 (omission in original) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).  Accordingly, "an 'alleged error is viewed in the totality of the entire charge, not in isolation,' and 'any finding of plain error depends on an evaluation of the overall strength of the State's case.'" State v. Cotto, 471 N.J. Super. 489, 545 (App. Div. 2022) (quoting State v. Nero, 195 N.J. 397, 407 (2008)).

N.J.S.A. 2C:2-4(a) provides in pertinent part: "Ignorance or mistake as to a matter of fact . . . is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and [i]t negatives the culpable mental state required to establish the offense." As our Supreme Court explained in Sexton, 160 N.J. at 102-07, however, "subsection (a) does not really create a separate defense; it serves to emphasize that a mistake may negate the culpability element required for conviction of an offense." Cannel, N.J. Criminal Code Annotated, cmt. 2 on N.J.S.A. 2C:2-4 (2026). Thus, the Court found, enactment of the statute was "technically unnecessary" because "[it] simply confirm[s that n]o person may be convicted of an offense unless each element . . . is proven beyond a reasonable doubt." State v. Pena, 178 N.J. 297, 306 (2004) (alterations and omission in original) (quoting Sexton, 160 N.J. at 100). Stated another way, "[e]vidence of an actor's mistaken belief relates to whether the State has failed to prove an essential element of the charged offense beyond a reasonable doubt." Sexton, 160 N.J. at 106.

In Sexton, the fifteen-year-old defendant was tried as an adult for murder and weapons offenses following the shooting death of his friend. 311 N.J. Super. 70, 73 (App. Div. 1998). "At some point the boys walked to a nearby vacant lot, where they both handled a handgun." Id. at 75. The defendant

21

testified the victim "invited him to the empty lot in order to show him 'something.'" Id. at 77. While the boys were in the lot, the victim showed defendant a gun and told the defendant "the gun was empty." Ibid. (emphasis omitted). The defendant testified he asked the victim "was he sure" and "he said yes." Ibid. (emphasis omitted). We glean from our opinion the defendant fired one shot that killed the victim. Id. at 75-76.

At trial, the State presented the testimony of a firearms examiner, who acknowledged "an inexperienced person easily might assume that once the magazine had been removed, no bullet remained in the chamber." Id. at 78. The defense argued "at the time of the shooting, Sexton was under a reasonable though mistaken belief that the gun was not loaded." Id. at 76. The jury convicted the defendant of reckless manslaughter, as a lesser-included offense of murder, and unlawful possession of a handgun without a permit. Id. at 73.

On appeal, we affirmed defendant's unlawful possession of a handgun conviction, but reversed his reckless manslaughter conviction. Citing multiple trial errors, including prosecutorial misconduct and ineffective assistance of counsel, we were unable to "conclude that the jury understood that it was the State's burden to disprove defendant's mistake beyond a reasonable doubt." Id. at 87. The Court affirmed. 160 N.J. at 107.

Conversely, in the present matter, the trial judge made clear to the jury the State had the burden of proving each element of the charged offenses beyond a reasonable doubt. See Model Jury Charges (Criminal), "Criminal Final Charge" (rev. Sept. 1, 2022). The judge explained if the State failed to carry its burden of proof as to the elements of aggravated manslaughter as charged, or the lesser-included reckless manslaughter offense, defendant must be found not guilty of that offense. See Model Jury Charges (Criminal), "Aggravated Manslaughter, (N.J.S.A. 2C:11-4(a))" (rev. Mar. 22, 2004);[4] Model Jury Charges (Criminal), "Reckless Manslaughter (N.J.S.A. 2C:11-4(b)(1))" (rev. Mar. 22, 2004). The judge explained in detail the elements of the offenses that had to be proven, including the applicable mental states. See ibid.

The trial judge also instructed the jury on the manner in which it should assess the testimony of the witnesses, noting the jury was free to accept all, a part of, or none of a witness's testimony. See Model Jury Charges (Criminal), "Criminal Final Charge." The judge emphasized the jurors were "the sole and

---

[4]  After the judge issued the aggravated manslaughter charge, the model jury charge was amended. See Model Jury Charges (Criminal), "Aggravated Manslaughter, (N.J.S.A. 2C:11-4(a))" (rev. Aug. 18, 2025). The revisions are not pertinent to this appeal.

exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached to the testimony of each witness." See ibid.

The jury was not specifically told it must find defendant not guilty if the State "failed to prove beyond a reasonable doubt that defendant did not believe [the gun was unloaded], or . . . was reckless in forming that belief." See Model Jury Charges (Criminal), "Ignorance or Mistake (N.J.S.A. 2C:2-4)." However, the instructions as a whole conveyed to the jurors, if defendant believed his gun was unloaded and was not reckless in forming his belief, they could not find the State had proven all elements of the charged offenses beyond a reasonable doubt.

Moreover, unlike the juvenile defendant in Sexton, who fired the gun after the victim said the gun retrieved from the lot was unloaded, the unrefuted State's evidence in the present matter revealed defendant was a veteran police officer, who fired his service weapon after Taylor and Kelly both warned defendant the gun he retrieved from the bedroom of his home was loaded. Although defendant claimed he believed the gun was unloaded, the circumstances presented in Sexton are distinguishable from the evidence adduced at trial here.

Assuming arguendo the trial judge erroneously failed to charge the jury sua sponte on mistake of fact, we are not convinced the purported error was harmful in view of "the overall strength of the State's case." Cotto, 471 N.J.

24

Super. at 545. Applying that standard, we are satisfied the State offered strong evidence against defendant. The State presented evidence defendant, a retired police officer, retrieved his service weapon from his bedroom on the heels of a night of drinking; both Taylor and Kelly warned defendant the gun was loaded; the State's expert opined the trigger was pulled and did not misfire; and defendant's expert, Jaikissoon, acknowledged law enforcement officers are trained to "always assume [a] handgun is loaded." Based on the totality of the circumstances presented here, we are not persuaded the failure to issue the mistake-of-fact charge would have altered the jury's verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

25